UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

LAW OFFICES OF JOSEPH L. MANSON
III,

        Plaintiff,

  -v-                                 No.  19-CV-04392-LTS-GWG

KEIKO AOKI,

        Defendant.

-------------------------------------------------------x

M<small>EMORANDUM</small> O<small>RDER</small>

Plaintiff Law Offices of Joseph L. Manson III ("Plaintiff") brings various state-law contract claims against Defendant Keiko Aoki ("Defendant") for unpaid legal expenses. (Complaint ("Compl."), Docket Entry No. 1, ¶ 1.)  Before the Court is Defendant's motion to compel arbitration and stay the proceedings pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.  (Notice of Motion to Compel Arbitration, Docket Entry No. 12.)  The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332.

The Court has reviewed all of the parties' submissions carefully and, for the following reasons, denies Defendant's motion insofar as it seeks an order compelling arbitration but grants it to the extent it seeks a stay of the proceedings in this case pending arbitration.

B<small>ACKGROUND</small>

The following summary of undisputed facts is drawn from the allegations in the Complaint and the submissions proffered in connection with the instant motion practice.

Plaintiff is a law firm based in Virginia.  (Compl. ¶ 2.)  Defendant is the widow of Rocky Aoki, who was the founder of the Benihana restaurant concept, and is the current Chief

Executive Officer of Benihana of Tokyo, LLC ("BOT") and trustee of the testamentary trust created by her late husband's will. (Compl. ¶ 8.) This action arises from Plaintiff's representation of Defendant and BOT in connection with counterclaims asserted in the "BI Litigation"—federal trademark litigation initiated in 2014 between BOT and Benihana, Inc. ("BI")[1]—concerning allegedly infringing statements appearing on BOT's website and allegedly infringing use of the Benihana trademark in connection with Defendant's other businesses. (Compl. ¶¶ 20-22.) Both Defendant and BOT were parties to the BI Litigation. (Compl. ¶¶ 10, 20.) Plaintiff alleges that Defendant owes $652,583.55 in unpaid legal fees and expenses incurred in connection with the BI Litigation. (Compl. ¶¶ 1, 35, 60, 66, 77, 86.)

Plaintiff and Defendant entered into a retention agreement dated February 1, 2014 ("2014 Retention Agreement" or "Agreement"). (Affidavit of Keiko Ono Aoki ("Aoki Aff."), Docket Entry No. 14, Ex. A). The 2014 Retention Agreement, which was drafted by Plaintiff, was addressed to Ms. Keiko Ono Aoki as Chairman of BOT and Trustee of the Rocky Aoki Testimonial Trust and contained a signature line for Keiko Ono Aoki, individually. (Aoki Aff., Ex. A at 1–2.) The Agreement "set forth the terms and conditions for your retention of [Plaintiff] as counsel for you and [BOT]," and defined "you and yours" to mean "you personally and . . . you in your capacity as the testamentary trustee of the trust created in the will of Rocky Aoki, [and] you in your capacity as an officer and director of BOT . . . ." (Aoki Aff., Ex. A at 1.)

---

[1]     BOT and BI are distinct companies, but the two business share the rights to operate Benihana restaurants worldwide. (Compl. ¶¶ 6–8.) BI owns the right to operate Benihana restaurants and use Benihana trademarks in the United States, Central America, South America, and the Caribbean. (Compl. ¶ 7.) BOT owns the right to operate Benihana restaurants and use Benihana trademarks in Hawaii and all geographic areas outside of the United States, Central America, South America, and the Caribbean. (Compl. ¶¶ 7–8.)

The 2014 Retention Agreement also contained an arbitration clause. The Agreement provided that "[a]ny disputes arising under this agreement will be resolved by mediation or arbitration conducted under the auspices of the American Arbitration Association." (Aoki Aff., Ex. A at 2.) The Agreement also required that any arbitration "be held in Washington, DC." (Id.) On February 12, 2014, Defendant sent a letter to Plaintiff, signed in her own name, confirming her assent to the Agreement's terms. (Id. at 4.) Plaintiff does not dispute the existence or validity of the 2014 Retention Agreement. (Plaintiff's Memorandum of Law in Opposition to Defendant Keiko Aoki's Motion to Compel Arbitration ("Pl. Opp."), Docket Entry No. 36, at 3.) Plaintiff contends, however, that it does not govern the claims that Plaintiff asserts against Defendant in this action.

Plaintiff alleges that it negotiated a "new retention agreement" with Defendant once it "became apparent that Manson's services would exceed the scope of the [2014] Retention Agreement." (Pl. Opp. at 5.) The only contractual term that Plaintiff identifies as having changed in the "new retention agreement" was an amendment to allow Plaintiff to charge Defendant on an hourly basis. (Affidavit of Joseph L. Manson III in Support of Plaintiff's Opposition to Motion to Compel Arbitration ("Manson Aff."), Docket Entry No. 37, ¶¶ 5–6.) This type of change was expressly contemplated by the 2014 Retention Agreement. (Aoki Aff., Ex. A at 2) ("If you ask me to provide services that both parties can reasonably expect to exceed the retainer, then a new agreement on fees must be negotiated at that time.") Plaintiff has not produced a copy of the "new retention agreement"[2] or identified any other terms of the alleged new agreement. Defendant alleges that the parties never entered into a new retention agreement,

---

[2]    Plaintiff proffers that it believes that the "new retention agreement" was lost when it upgraded its computer network in 2017. (Manson Aff. ¶¶ 3, 7.)

and that they "never discussed terminating (and did not terminate) [their] arbitration agreement in the [2014 Retention Agreement]."  (Affidavit of Keiko Ono Aoki in Support of Motion to Compel Arbitration ("Aoki Rep. Aff."), Docket Entry No. 48, ¶ 3.)

The 2014 Retention Agreement did not delineate separate billing procedures for Defendant and BOT; it contemplated one "$15,000 retainer per quarter" and one "detailed billing statement every month describing the services rendered under the retainer."  (Aoki Aff., Ex. A at 2.)  Further, Plaintiff alleges that the "[i]nvoices for work performed in the BI Litigation did not distinguish between work performed specifically for Aoki and work performed specifically for BOT, because the work was necessary for both clients."  (Compl. ¶ 32.)  Plaintiff alleges that "[s]ince September 30, 2016 Plaintiff has billed BOT and Aoki [together] for 1920 hours of work in the BI Litigation."  (Compl. ¶ 35.)  Plaintiff does not allege that Defendant was ever billed separately or individually for legal services rendered in connection with the BI Litigation.  (See Compl.)  Plaintiff seeks to recover the entire billed amount from Defendant; Defendant contends that Plaintiff's claims against her are subject to arbitration pursuant to the 2014 Retention Agreement.

## DISCUSSION

The FAA provides that arbitration agreements in contracts involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C.S. § 2 (LexisNexis 2008).[3]  The Court is required to "direct[] the parties to proceed to arbitration in accordance with the terms of the [arbitration] agreement," provided that there is no issue regarding its formation or validity.  9 U.S.C.S. § 4

---

[3]     Plaintiff does not dispute that the 2014 Retention Agreement is a contract involving interstate commerce.  See 9 U.S.C. § 2.

(LexisNexis 2008); <u>Alfonso v. Maggies Paratransit Corp.</u>, 203 F. Supp. 3d 244, 246 (E.D.N.Y. 2016). "'In the context of motions to compel arbitration brought under the [FAA] . . . the court applies a standard similar to that applicable for a motion for summary judgment,' and courts may therefore consider materials outside the complaint, including the arbitration agreement itself." <u>Alfonso</u>, 203 F. Supp. at 247 (quoting <u>Bensadoun v. Jobe-Riat</u>, 316 F.3d 171, 175 (2d Cir. 2003)).

In evaluating Defendant's motion to compel arbitration, the Court begins by determining "whether the parties agreed to arbitrate disputes at all." <u>ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.</u>, 307 F.3d 24, 28 (2d Cir. 2002). "'[W]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.'" <u>Bell v. Cendant Corp.</u>, 293 F.3d 563, 566 (2d Cir. 2002) (quoting <u>First Options of Chi., Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995)). Under New York law, "a party who executes a contract is considered bound by the terms of that contract." <u>Ruiz v. New Avon LLC</u>, No. 18 Civ. 9033 (VSB), 2019 WL 4601847, at *6 (S.D.N.Y. Sept. 22, 2019) (quoting <u>Stern v. Espeed, Inc.</u>, No. 6 Civ. 958 (PKC), 2006 WL 2741635, at *1 (S.D.N.Y. Sept. 22, 2006)). Furthermore, "[a] party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." <u>Harrington v. Atl. Sounding Co.</u>, 602 F.3d 113, 124 (2d Cir. 2010).

It is undisputed that Plaintiff and Defendant both signed the 2014 Retention Agreement, which includes an explicit arbitration clause: the parties agreed that "[a]ny disputes arising under [the Retention Agreement] will be resolved by mediation or arbitration conducted under the auspices of the American Arbitration Association." (Aoki Aff., Ex. A at 2.) Plaintiff

does not dispute that the 2014 Retention Agreement took the form of a letter addressed to "Ms. Keiko Ono Aoki[,] Chairman, Benihana of Tokyo, Inc.[,] Trustee, Rocky Aoki Testamentary Trust," that it provided for retention of Plaintiff as counsel for "you and [BOT]," and that it used the term "you" to refer to Defendant "personally" and to Defendant in her BOT and Trustee capacities, as well as to BOT.  Nor does Plaintiff dispute that the scope of work as defined by the Agreement included legal services for BOT that were, at a minimum, inextricably intertwined with the services performed for Defendant that are the subject of Plaintiff's Complaint.  The Complaint alleges that this litigation concerns fees incurred for "work [that] was necessary for both [Defendant and BOT]," and that Plaintiff's "[i]nvoices for work performed in the BI Litigation did not distinguish between work performed specifically for Aoki and work performed specifically for BOT."  (Compl. ¶¶ 21–22, 32.)  Plaintiff makes a conclusory proffer concerning another "new retention agreement," but fails to proffer a copy of the alleged agreement or identify any of its terms other than an immaterial provision concerning billing logistics.  In the absence of facts demonstrating that the 2014 Retention Agreement was superseded or abrogated by another agreement concerning the legal services at issue, the parties' proffers and Plaintiff's own factual allegations are sufficient to establish the existence of a valid, relevant arbitration agreement between Plaintiff and Defendant.  The parties disagree, however, as to whether the terms of their arbitration agreement cover the claims that Plaintiff has asserted against Defendant in this action.

After a court determines that a valid arbitration agreement exists, it then ordinarily must determine "whether the dispute at issue comes within the scope of the arbitration agreement."  ACE Capital Re Overseas Ltd., 307 F.3d at 28.  While there is a general presumption that the issue of arbitrability should be resolved by the courts, the issue of

arbitrability should be referred to the arbitrator "if there is clear and unmistakable evidence from the arbitration agreement . . . that the parties intended that the question of arbitrability shall be decided by the arbitrator." Contec Corp. v. Remote Sol. Co., 398 F.3d 205, 208 (2d Cir. 2005) (internal quotation marks and emphasis omitted); see also Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 530 (2019) ("Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator.") When the parties "explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, [such as the rules of the American Arbitration Association,] the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Contec Corp., 398 F.3d at 208.

Here, the arbitration clause of the 2014 Retention Agreement invoked the rules of the American Arbitration Association ("AAA") by specifying that disputes arising under the Agreement must be arbitrated "under the auspices of the American Arbitration Association." (Aoki Aff., Ex. A at 2.) Rule 1(a) of the AAA's Commercial Arbitration Rules states that "parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration . . . by the AAA of a domestic commercial dispute without specifying particular rules." Rule R-1(a), AAA, 2018 WL 2117639. Citing Rule 1(a), the Second Circuit has held that "when, as here, parties expressly agree to submit their commercial disputes 'to AAA arbitration for resolution,' . . . such language is reasonably understood, without more, to agree to arbitration pursuant to AAA rules and to the incorporation of those rules into the parties' agreement." Idea Nuova, Inc. v. GM Licensing Grp., Inc., 617 F.3d 177, 181 (2d Cir. 2010). AAA Commercial Arbitration Rule 7(a) provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the

existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Rule R-7(a), AAA, 2018 WL 2117639. The arbitration clause of the 2014 Retention Agreement, when viewed in light of the AAA's Commercial Arbitration Rules, presents "'clear and unmistakable evidence . . . that the parties intended that the question of arbitrability shall be decided by the arbitrator.'" Contec Corp., 398 F.3d at 208 (quoting Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir.2002)); see also P & P Indus., Inc. v. Sutter Corp., 179 F.3d 861, 867-868 (10th Cir. 1999) (concluding that an arbitration clause mandating that any disputes be arbitrated "before the American Arbitration Association," indicates an agreement to be bound by the procedural rules of the AAA); Pitino v. Adidas Am., Inc., No. 3:17 Civ. 639 (DJH), 2018 WL 3865408, at *2 (W.D. Ky. Aug. 14, 2018) (finding agreement "that the dispute shall be submitted to final and binding arbitration before the [AAA] in Portland, Oregon" provided clear and unmistakable delegation of authority to the arbitrator to decide question of arbitrability).

The Court is thus bound to recognize the existence of a valid agreement to arbitrate and to defer to the arbitrator's determination as to whether the instant dispute is within the scope of that agreement. The Court cannot, however, issue an order compelling arbitration pursuant to the agreement because the 2014 Retention Agreement's arbitration clause provides that "[t]he arbitration shall be held in Washington, DC." (Aoki Aff., Ex. A at 2.) Section 4 of the FAA provides that any proceeding compelled under its authority "shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C.S. § 4 (LexisNexis 2008). Although the Second Circuit has not decided the question of whether Section 4 precludes a district court from compelling arbitration outside of its district, persuasive decisions in this Circuit have routinely held that it does. See, e.g., J.P. Morgan Sec. Inc. v. La. Citizens Prop. Ins.

Corp., 712 F. Supp. 2d 70, 82–83 (S.D.N.Y. 2010) (holding that the court could not compel arbitration scheduled to occur outside the Southern District of New York); Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc., 269 F. Supp. 2d 356, 363–64 (S.D.N.Y. 2003) ("[T]he Court's authority to compel arbitration under FAA § 4 is restricted to arbitration proceedings that occur within this District."); DaPuzzo v. Globalvest Mgmt. Co., L.P., 263 F. Supp. 2d 714, 727 (S.D.N.Y. 2003) ("[A] district court compelling arbitration under § 4 lacks the power to order arbitration to proceed outside its district." (quoting Jain v. de Mere, 51 F.3d 686, 690 (7th Cir. 1995))); Provident Bank v. Kabas, 141 F. Supp. 2d 310, 315 (E.D.N.Y. 2001) ("[A]rbitration may be ordered to proceed only within the judicial district in which the petition to compel has been filed."). Therefore, because the 2014 Retention Agreement provides that the parties' arbitration must occur in Washington, D.C., outside of the Southern District of New York, the Court cannot compel arbitration here and, therefore, cannot grant Defendant's motion to compel. Instead, the Court grants Defendant's alternative request for an order staying the litigation pending a final outcome of the arbitration. See 9 U.S.C. § 3.

CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration is denied, and Defendant's motion for stay of the proceedings is granted. This case is hereby stayed pending the arbitration of Plaintiff's claims. The parties are directed to file a joint status report by June 30, 2020, and each December 30 and June 30 thereafter, stating whether this case should remain stayed, be reinstated to the active calendar, or be dismissed.

This Memorandum Order resolves Docket Entry No. 12.

SO ORDERED.

Dated: New York, New York
      January 3, 2020


                    /s/ Laura Taylor Swain
                  LAURA TAYLOR SWAIN
                  United States District Judge